Santiago **GUERRERO** and Eva Guerrero, individually and as next friends of Marisela Guerrero, a minor, and David Guerrero and Jimmy Guerrero, Plaintiffs,

v.

**GENERAL MOTORS CORP.,** Hendrix GMC Trucks, Inc., and Allied Signal Corp., Defendants.

Civ. A. No. B–95–41.

United States District Court, S.D. Texas, Brownsville Division.

June 13, 1995.

Tony Martinez, Brownsville, TX, David L. Perry, David L. Perry & Assoc., Corpus Christi, TX, for plaintiffs Santiago Guerrero, Eva S. Guerrero, Individually and as Next Friends of Marisela Guerrero, a Minor and David Guerrero and Jimmy A. Guerrero.

Eduardo Roberto Rodriguez, Rodriguez, Colvin & Chaney, Brownsville, TX, for defendant Hendrix GMC Trucks, Inc.

Richard White Crews, Brin & Brin, Corpus Christi, TX, for defendant Allied Signal, Inc.

### MEMORANDUM AND ORDER

KAZEN, District Judge.

Pending is Plaintiffs' motion to remand this case to state court under 28 U.S.C.

§ 1447(c). This personal injury action arises from an automobile accident in which Plaintiff Santiago Guerrero sustained serious injuries. Plaintiffs filed suit in state court against Defendants General Motors, Hendrix GMC Trucks, and Allied Signal on December 22, 1994. General Motors manufactured the vehicle in which Guerrero was injured, and Allied manufactured the vehicle's allegedly defective seatbelts. Hendrix was the dealer that sold the vehicle.

Plaintiffs served Hendrix on December 22, 1994 and General Motors and Allied exactly one week later, on December 29, 1994. Instead of removing to federal court, General Motors and Allied filed a third-party action in the state court against the driver of the vehicle in which Guerrero was riding, the driver's employer (Texas Tech Univ. Health Sciences Center), and the State of Texas. On March 9, 1995, General Motors and Allied non-suited the third-party defendants after learning that they had entered into a settlement with Plaintiffs.[1]

On the same day, Defendants removed the case to this Court under 28 U.S.C. §§ 1441(a) and 1332(a)(1). Plaintiffs are all citizens of Texas while General Motors and Allied are not. Although Hendrix is a Texas citizen, Defendants argue that Hendrix is a nominal party, fraudulently joined to defeat this Court's subject-matter jurisdiction. They also contend that Plaintiffs abandoned their claims against Hendrix when their counsel allegedly notified defense counsel that Plaintiffs did not intend to hold Hendrix liable and that Hendrix would be dismissed a year from the date the suit was filed. Plaintiffs respond that Hendrix is not a nominal party; that they have not abandoned their claims against Hendrix; and that in any event, Defendants notice of removal was untimely—having been filed seventy-two days after the suit was commenced and the first defendant was served.

### Discussion

#### A. Fraudulent Joinder.

Defendants argue that Hendrix is a fraudulent party because it is not independently

1. This settlement apparently resulted from a separate state-court suit Plaintiffs brought against the driver, Texas Tech, and the State.

liable to Plaintiffs. It is merely the "innocent" retailer of the vehicle involved in the accident that resulted in Guerrero's injuries. As such, it is entitled to full indemnification from the manufacturer. Thus, the argument goes, Hendrix is "an unnecessary party" to the lawsuit that "will not be liable to satisfy any judgment rendered against it in favor of plaintiffs." Defendants' Notice of Removal ¶ 9.

■ Defendants misconstrue their burden of showing fraudulent joinder. The question is not whether Hendrix is an "unnecessary party" for obtaining full relief, or whether any judgment rendered against Hendrix would ultimately be paid by General Motors. Rather, the question is whether Defendants can, as the parties invoking federal jurisdiction, show that there is "no possibility that Plaintiff[s] would be able to establish a cause of action against the in-state defendant in state court." *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir.1981). This is a "heavy" burden, as the Court must resolve all disputed questions of fact and any uncertainties as to the current state of controlling substantive law in favor of Plaintiffs. *Id.* at 549, 551.

■ Defendants cannot meet their burden. Texas law has long been that a plaintiff in a defective products action may sue, under principles of strict liability, the "innocent" seller along with the manufacturer. *E.g., McKisson v. Sales Affiliates, Inc.*, 416 S.W.2d 787, 790 n. 3 (Tex.1967); *Hamilton v. Motor Coach Indus., Inc.*, 569 S.W.2d 571, 575–76 (Tex.Civ.App.—Texarkana 1978, no writ); Restatement (Second) of Torts § 402A (1965). That Tex.Civ.Prac. & Rem.Code § 82.002 (West 1994) requires a manufacturer to indemnify a seller against losses arising out of a products liability action does not alter this analysis. On the contrary, it presupposes that the plaintiff has exercised his legal right to sue the seller and has obtained a judgment. Thus, Plaintiffs can bring an action against Hendrix in this case.

Defendants also argue that they may establish fraudulent joinder by showing that Plaintiffs never intended to obtain a judgment against them. They find the strongest support for their position in *Mask v. Chrys-*

*ler Corp.*, 825 F.Supp. 285, 288 (N.D.Ala. 1993), *aff'd,* 29 F.3d 641 (11th Cir.1994). That case involved a suit against Chrysler and one of its local dealerships. The court denied the plaintiffs' motion to remand in part because the evidence showed that plaintiffs never expected to collect from the dealers. In fact, plaintiffs' counsel had stated in a letter to defense counsel that "it is certainly my opinion and the opinion of my clients that the dealerships had absolutely nothing to do with the problems existing in the automobile." 825 F.Supp. at 289.

Even assuming that *Mask* correctly interprets the law, Defendants' argument must be rejected. Defendants rely on the affidavit of Hendrix' attorney, Michael Whellan, who testified that Plaintiffs' counsel "informed me that the Plaintiff did not intend to sue Hendrix for any independent acts of negligence if Hendrix would agree to cooperate in discovery. [Plaintiffs' counsel] explained that he planned to keep Hendrix in the lawsuit for a period of one year to prevent removal of the case to Federal Court." Whellan Aff. ¶ 3.

Attached to this affidavit is a memorandum written by Whellan to his co-counsel, dated January 24, 1995, which memorializes his conversation with defense counsel. Purportedly written soon after Whellan's conversation with defense counsel, it states in part: "[Plaintiffs' counsel] also told me that he would agree not to sue us for any ind. acts of negligence IF we would produce the documents we have and agree to a telephone deposition in which Hendrix represents that it does not remember the sale of this van, etc." Defs.' Resp. to Pls.' Mot. for Remand, Ex. A., Apr. 26, 1995.

In response, Plaintiffs have filed the affidavit of their own attorney, Mikal Watts, who purportedly made the promises to Whellan. Watts adamantly denies ever having made any promises regarding the prosecution of the case against Hendrix.

8. I have never told defense counsel that I intended to dismiss Hendrix at the expiration of one year. I have informed counsel for Hendrix that it would be necessary for Plaintiffs to take the deposition of Hendrix GMC Trucks, Inc. to learn whether it

had any independent culpability other than its responsibility in strict liability law. Since this conversation, I have learned that Hendrix GMC Trucks, Inc. caused the condition of the van sold to it by General Motors to be substantially modified prior to selling the same to Texas Tech Health Sciences Center.

.    .    .    .    .

9. I have made no statement indicating I intend to abandon Plaintiffs' claims against Hendrix GMC Trucks, Inc., . . . .

10. I intend to fully pursue the case against each of the three defendants I have sued.

Watts Aff. ¶¶ 8–10. Because all fact disputes must be resolved in favor of Plaintiffs, *B. Inc.*, 663 F.2d at 549, 551, Defendants cannot prevail on this argument.

Moreover, according to Whellan's own testimony, Watts agreed only to refrain from suing Hendrix for its "independent acts of negligence." Watts never promised to forbear from proceeding against Hendrix under strict liability principles. Accordingly, the Court concludes that Hendrix was not fraudulently joined.[2]

### B. *Abandonment.*

Defendants next contend that Plaintiffs abandoned their claims against Hendrix when Watts promised not to sue for any independent acts of negligence. Under 28 U.S.C. § 1446(b), if a case is not removable at the time it is filed, it may be removed within thirty days "after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable . . . ." A line of dis-

trict court decisions has interpreted this language to mean that "if the plaintiff voluntarily dismisses, discontinues, or in any way abandons, the action as to the resident joint defendant, the cause then becomes removable [under 28 U.S.C. §§ 1441(a) and 1332], and may, upon prompt action, be removed by the nonresident who has been served." *Stamm v. American Tel. & Tel. Co.*, 129 F.Supp. 719, 721 (W.D.Mo.1955).

Several decisions have followed the rule in *Stamm*, denying the motion to remand because plaintiff's counsel's statement constituted a voluntary abandonment of the claims against the resident defendant. *E.g.*, *DiNatale v. Subaru of Am.*, 624 F.Supp. 340, 344 (E.D.Mich.1985); *Erdey v. American Honda Co., Inc.*, 96 F.R.D. 593, 599 (M.D.La.1983), *reconsidered on other grounds*, 558 F.Supp. 105; *Heniford v. American Motors Sales Corp.*, 471 F.Supp. 328 (D.S.C.1979), *appeal dismissed*, 622 F.2d 584 (4th Cir.1980). "The technicality of how plaintiff's intention is expressed is of no moment—it is the expression of the intent by plaintiff which makes the case removable." *Erdey*, 96 F.R.D. at 599.

For example, in *DiNatale*, the case most analogous to the present case, plaintiff's counsel wrote a letter to defense counsel confirming an earlier agreement between the parties. The agreement purportedly called for the resident defendant to refrain from urging its motion for summary judgment against the plaintiffs, and in return, for the plaintiff to refrain from attempting recovery against the resident defendant, "no matter the outcome of the trial." 624 F.Supp. at 340.

The *DiNatale* plaintiff's admitted entering into the agreement with the resident defendant, but contended that it "was prompted by the likelihood that [the resident defendant]

---

**2.** Defendants' Notice of Removal might be read to assert a third basis for fraudulent joinder. In footnote two, Defendants state that "Hendrix has no assets from which Plaintiffs could recover. Hendrix GMC Trucks, Inc. has been dissolved and liquidated. This information was on record with the Secretary of State on the date Plaintiffs filed their lawsuit in State Court." Defs.' Notice of Removal, Mar. 10, 1995. Defendants have not briefed this issue in either their notice of removal or their response to Plaintiffs' motion for remand.

In any event, Hendrix' dissolution after Guerrero's accident does not make Hendrix a nominal party in this case. Texas law allows suits against a liquidated corporation within three years of the date of suit, Tex.Bus.Corp.Act, art. 7.12A, and provides that the corporation continues to survive "for purposes of that action or proceeding until all judgments, orders, and decrees have been fully executed," Tex.Bus.Corp. Act, art. 7.12C. Hendrix was not dissolved and liquidated until November 10, 1994.

was uncollectible and therefore the agreement not to attempt collection of any judgment was a gesture only." Therefore, the resident defendant's continued presence in the action "was a matter of substance." *Id.* The court rejected this argument, holding that the letter evidenced plaintiff's "unequivocal abandonment" of her claim against the resident defendant. *Id.*

■ *DiNatale* does not control this case. As reflected by Watts' affidavit, there is a serious dispute as to whether the parties agreed that Hendrix would not be sued for its own negligence.[3] And again, even assuming that Watts promised not to assert any claims based upon Hendrix' "independent negligence," there is no evidence that he promised not to prosecute Hendrix under strict liability principles. As best the Court can determine from the petition, Plaintiffs' claims against Hendrix are grounded in strict liability. Plaintiffs do not allege any negligence on Hendrix' own part.[4]

Finally, according to the memorandum written by Whellan, Watts stated that he "*would agree* not to sue us for any ind. acts of negligence *IF* we *would produce* the documents we have agree to a telephone deposition in which Hendrix represents that it does not remember the sale of this van, etc." Defs.' Resp. Ex. A. (Emphasis added). Thus, Watts' promise was conditional at most. He would enter into the agreement only if Hendrix produced the documents and agreed to the telephonic deposition. The record does not indicate that either of these events occurred. The Court concludes that Plaintiffs have not abandoned their claims against Defendant Hendrix.

Plaintiffs have failed to show that Hendrix is not a real party in this case. As a Texas citizen, Hendrix destroys complete diversity and keeps this case beyond the Court's subject-matter jurisdiction.

## C. *Timeliness of Defendants' Notice of Removal.*

Although not necessary to the resolution of this case, there is also merit to Plaintiffs' second ground for remand, namely that Defendants' removal was several weeks late under 28 U.S.C. § 1446(b). Hendrix was named as a defendant in Plaintiffs' original petition and was identified as the dealer that sold the allegedly defective vehicle. The petition seeks to hold Hendrix liable under strict liability principles. It does not appear to allege that Hendrix' own negligence caused Plaintiffs' injuries. Thus, Defendants had all the information they needed to remove the case under their fraudulent joinder theory on the date they were served with the petition. Moreover, as early as January 24, 1995, the date of the Whellan memo, they had notice of the alleged offer to later dismiss Hendrix.

■ Defendants did not remove at that time, however. They instead invoked the state court's jurisdiction to bring a third-party action against the driver of the vehicle and his employer. Defendants did not remove until they learned that Plaintiffs had settled with the third-party defendants. Defendants now claim that they had no choice but to initiate the third-party action in state court because the third-party defendants were "indispensible parties" under Tex. R.Civ.P. 39(a).

As Plaintiffs correctly note in their reply of May 5, 1995, the driver and his employer were not indispensable parties. The one Texas Court of Appeals case relied upon by Defendants has been overruled by *Cox v. Johnson,* 638 S.W.2d 867, 868 (Tex.1982). When General Motors and Allied Signal were served, they had a clear-cut choice. They could have either removed to federal court and urged fraudulent joinder of Hendrix, or they could have proceeded in state court. They chose the latter course, notwithstanding the general requirement that a removal

---

3. The Court also notes that there is no indication that Watts had his clients' permission to make any agreements regarding which defendants would be prosecuted.

4. Watts states in his affidavit that evidence recently discovered indicates that Hendrix modi-

fied the van before it was sold, and that consequently, Hendrix might also be liable for its own negligence. Watts Aff. ¶ 8. Plaintiffs have yet to file an amended complaint asserting such a theory.

notice must be filed within thirty days of service. They could have instead filed a timely notice of removal, urging their theory of fraudulent joinder based on information available to them at the time of service.

Had they been successful in removing Hendrix from the case, they could have then filed their third-party claim under Fed. R.Civ.P. 14. There would have been independent federal jurisdiction, since the remaining defendants would be non-Texas citizens while the third-party defendants would be Texas citizens. However, they would not have needed independent jurisdiction because of the doctrine formerly known as ancillary jurisdiction, which would have supported a third-party claim even against a non-diverse party. *Rogers v. Aetna Cas. & Sur. Co.*, 601 F.2d 840, 843 (5th Cir.1979). After 1990, this same principle would have applied under the newly-created supplemental jurisdiction statute, 28 U.S.C. § 1367. For the foregoing reasons, Defendants' removal in this case was untimely.

### Conclusion

Because the Court lacks subject-matter jurisdiction over this case, and because Defendants notice of removal was untimely filed, Plaintiffs' motion for remand is GRANTED.