James Douglas **DELANEY** and
Patricia L. Delaney,
Plaintiffs,

v.

**VIKING FREIGHT, INC.,** and Central
Freight Lines, Inc., Defendants.

No. 3:98–CV–069.

United States District Court,
E.D. Texas,
Paris Division.

March 24, 1999.

David Zedler, Pottsboro, TX, for James Douglas Delaney, Patricia Louis Delaney.

William H. Chamblee, Chamblee & Ryan, Dallas, TX, for Viking Freight Inc., Central Freight Lines Inc.

## ORDER REMANDING CASE TO STATE COURT

SCHELL, Chief Judge.

This matter is before the court on the motion of Plaintiffs James D. Delaney and Patricia L. Delaney to remand this case to the 6th Judicial District Court of Lamar County, Texas, filed on December 9,1998. *See* Dkt. # 4. On December 21, 1998, Defendants Viking Freight, Inc., ("Viking Freight") and Central Freight, Inc., ("Central Freight") filed a response in opposition to the motion. Through their motion, Plaintiffs argue that Defendants' removal was untimely, that this action is nonremovable because it arises under state worker's compensation laws, and that the case presents an unsettled question of state law that warrants federal court abstention. Upon consideration of the parties' written submissions and the circumstances of this case, the court finds that Plaintiffs' motion to remand should be GRANTED.

### DISCUSSION

On August 7, 1996, James D. Delaney allegedly suffered a back injury while moving equipment in the course and scope of his employment as a truck driver. Plaintiffs, residents of Texas, filed a negligence action in Texas state court on May 8, 1998, seeking an unspecified amount of damages for injuries allegedly stemming from the incident.[1] Named as defendants in the lawsuit and identified as Delaney's employers were Central Freight, a corporate citizen of Texas, and Viking Freight, a corporate citizen of California. On November 10, 1998, Defendants removed the case to federal court on the ground that Central Freight had been fraudulently joined to defeat diversity jurisdiction. On December 9, 1998, Plaintiffs filed a motion to remand challenging the timeliness of Defendants' removal. The primary issue in this case is whether Defendants' notice of removal was filed within 30 days of first ascertaining that Central Freight had been fraudulently joined.

Any civil case brought in state court that could have originally been filed in federal court may be removed to federal court pursuant to 28 U.S.C. § 1441(a). Federal district courts have original jurisdiction over civil cases where the amount in controversy exceeds $75,000 and there is absolute diversity of citizenship among the parties. *See* 28 U.S.C. § 1332(a). The timeliness of a notice of removal is governed by 28 U.S.C. § 1446(b), which creates a 30–day limitation period for removing cases. The right to remove arises when a defendant is first put on notice that all prerequisites for invoking federal jurisdiction have been met. Thus, "if the case stated by the initial pleading is removable, then notice of removal must be filed within thirty days from the receipt of the initial pleading by the defendant." *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 161 (5th Cir.1992). If it is not readily apparent from the initial pleading that the case is removable, a notice of removal must be filed "within thirty days after receipt by the defendant ... of a copy of

---

1. Plaintiffs' state court complaint did not allege a specific amount of damages but sought recovery for the following: lost wages, lost economic opportunity for pension investment, past and future pain and suffering, mental anguish, and physical impairment, loss of quality of life, loss of consortium, exemplary damages, pre-judgment interest, post-judgment interest, attorney's fees, and costs. Defendants concede that it was "reasonably clear" from Plaintiffs' complaint that the amount in controversy exceeds $75,000 in this case and that matter is not in dispute.

an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b). In the fraudulent joinder context, a defendant has 30 days from the date that the fraudulent joinder could first be ascertained in which to file a notice of removal. *See Jernigan v. Ashland Oil,* 989 F.2d 812, 817 (5th Cir.1993) (holding that 30–day removal period commenced when the diverse defendant discovered that a nondiverse defendant was fraudulently joined).[2] "[R]emoval statutes are to be construed strictly against removal and for remand," *Eastus v. Blue Bell Creameries, L.P.,* 97 F.3d 100, 106 (5th Cir.1996), and a failure to timely file a notice of removal is a defect that requires remand to state court. *See Royal v. State Farm Fire & Cas. Co.,* 685 F.2d 124, 127 (5th Cir.1982).

In the instant case, Defendants removed this action on the basis of diversity jurisdiction, claiming that the citizenship of the only nondiverse defendant, Central Freight, must be ignored because that party was fraudulently joined. *See Tedder v. F.M.C. Corp.,* 590 F.2d 115, 117 (5th Cir. 1979) (noting that the citizenship of a fraudulently joined defendant will be disregarded for purposes of determining removability). A party is deemed to be fraudulently joined if "there is no arguably reasonable basis for predicting that state law might impose liability" on that party under the facts alleged. *Id.* Plaintiffs acknowledge that there is no reasonable basis for predicting that Texas law would impose liability on Central Freight in this case. Thus, the question of whether that party was fraudulently joined is not in dispute.[3] What is in dispute, however, is

2. While few courts have expressly addressed the issue of when a removal notice must be filed in a case involving fraudulent joinder, most reported opinions have enforced a 30–day removal period that begins to run from the time defendants can first ascertain that a party has been fraudulently joined. *See, e.g., Jernigan,* 989 F.2d at 817; *Poulos v. Naas Foods, Inc.,* 959 F.2d 69, 73 n. 4 (7th Cir. 1992) (holding that failure to remove within 30 days after receiving state court complaint from which defendant could have discerned fraudulent joinder of nondiverse party rendered removal untimely); *Naef v. Masonite Corp.,* 923 F.Supp. 1504, 1513 (S.D.Ala.1996) (holding that notice of removal based on fraudulent joinder was "procedurally defective because it was filed more than thirty days after Defendants could have intelligently ascertained that the action was removable"); *Guerrero v. General Motors Corp.,* 892 F.Supp. 165, 169 (S.D.Tex.1995) (remanding case where defendants had all information needed to remove the case based on fraudulent joinder on the date they were served with plaintiff's complaint but filed notice of removal more than 30 days later); *Skidmore v. Beech Aircraft Corp.,* 672 F.Supp. 923, 925 (M.D.La. 1987) (requiring that defendant's petition for removal based on fraudulent joinder be brought within 30 days of learning of the fraudulent joinder); *Delatte v. Zurich Ins. Co.,* 683 F.Supp. 1062, 1064 (M.D.La.1988) (holding that removal based on fraudulent joinder was not timely where it occurred more than 30 days after the defendants learned of the

nondiverse corporate defendant's dissolution); *see also* 14C Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3732 (3d ed.1998) (noting that "federal district courts have required that the notice of removal be filed within thirty days of receiving information indicating that there has been a fraudulent joinder"). *But see Armond v. Shoney's, Inc.,* No. 91–0895, 1991 WL 162120, at *6 (E.D.La. Aug. 9, 1991) (holding that a removal notice must be filed within a "reasonable time" after fraudulent joinder becomes evident). This court joins those courts that require a notice of removal to be filed within 30 days of the date on which a defendant could first ascertain that a case is removable based on fraudulent joinder. This approach is most consistent with 28 U.S.C. § 1446(b), which outlines only two measures of timeliness—30 days from the date a defendant receives an initial pleading evidencing removability, or 30 days from the date a defendant subsequently receives additional information showing the case to be removable. The court notes in passing that Defendants' filings presume the applicability of a 30–day removal period in the fraudulent joinder context.

3. Notwithstanding the negative connotation of the term "fraudulent joinder," whether joinder is fraudulent does not depend on a party's subjective intent nor is the term intended to impugn the integrity of a plaintiff or counsel. As the Seventh Circuit has noted:

whether Defendants filed their notice of removal within 30 days of first ascertaining that Central Freight had been fraudulently joined. Plaintiffs suggest two grounds for finding that Defendants did not timely file their notice of removal.

First, they argue that Defendants knew at the time they received Plaintiffs' state court complaint that no legitimate cause of action could be maintained against Central Freight based on the facts alleged. For support, they point out that Defendants filed an amended answer in state court on July 8, 1998, in which they specifically alleged defect of parties with regard to Central Freight. That amended answer asserted that Central Freight cannot be liable in this action because it has never been James Delaney's employer, it did not exist at the time of Delaney's alleged injury, and it has never assumed liability for the claims of Viking Freight employees.[4] Plaintiffs thus argue that because all the information needed to ascertain the removability of this case based on fraudulent joinder was available to Defendants when they received Plaintiffs' complaint, the 30–day removal period was triggered at that time.

The second ground advanced by Plaintiffs for finding removal untimely is that Defendants received "other paper" within the meaning of 28 U.S.C. § 1446(b) that triggered removability more than two months before this case was removed. Plaintiffs note that Defendants took the oral deposition of James Delaney on August 4, 1998, and that in response to questions posed by defense counsel at that time, Delaney specifically acknowledged that Central Freight has never been his employer. That testimony, Plaintiffs contend, would have eliminated any doubt in Defendants' minds about whether Central Freight could be found liable for Delaney's alleged on-the-job injury. Citing *SWS Erectors, Inc. v. Infax*, 72 F.3d 489, 494 (5th Cir.1996), Plaintiffs argue that when Defendants received a certified copy of Delaney's deposition transcript on or about September 8, 1998, they received "other paper" under § 1446(b) from which they could have ascertained that the case had become removable. Plaintiffs assert that even if Defendants could not have detected Central Freight's fraudulent joinder when they first received Plaintiffs' complaint, they surely could have done so by the time they received Delaney's deposition transcript and, thus, their right of removal accrued at the very latest on September 8, 1998.

In response to Plaintiffs' motion to remand, Defendants do not specifically deny knowing that Central Freight was an improper party early in the lawsuit. Instead, they argue that they filed their notice of removal just 28 days after Plaintiffs' first "voluntary act" that rendered this case removable. Like Plaintiffs, Defendants rely on *SWS Erectors* to support their position. However, Defendants cite that case for the proposition that removability under § 1446(b) can only be triggered by a plaintiff's voluntary acts and that a defendant's subjective knowledge that the prerequisites of removal have been satisfied cannot start accrual of the 30–day limita-

---

"When speaking of jurisdiction, 'fraudulent' is a term of art. Although false allegations of jurisdictional fact may make joinder fraudulent, in most cases fraudulent joinder involves a claim against an in-state defendant that simply has no chance of success, whatever the plaintiffs motives." *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir.1992) (internal citations omitted).

4. Defendants' removal notice explains that James Delaney's employer at the time of his injury was Viking Freight. Prior to working for that company Delaney apparently worked for a company named "Central Freight Lines, Inc.," that merged into Viking Freight sometime before August 1996. Defendant Central Freight was not incorporated until May 1997 and, as best the court can tell from the parties' filings, is either a subsidiary of Viking Freight or is closely associated with Viking Freight in some other way.

tion period.[5] According to Defendants, the first voluntary act performed by Plaintiffs happened on October 13, 1998, when Plaintiffs' counsel admitted for the first time during a telephone conference that Central Freight is not a proper party and agreed to dismiss all claims against it. They assert that prior to that telephone conference, Plaintiffs had given no indication that they believed their claims against Central Freight lacked a legal basis and any information to that effect in Defendants' possession would be purely subjective knowledge incapable of triggering removal.

In regard to Plaintiffs' claim that James Delaney's deposition transcript constitutes "other paper," Defendants argue that Delaney's acknowledgment that he has never worked for Central Freight was not the equivalent of an abandonment of his claims against that party. Defendants appear to take the position that although they subjectively knew that Plaintiffs had no valid claim against Central Freight, Plaintiffs had not yet performed any voluntary act by that time to enable Defendants to ascertain that fact. They point out that Plaintiffs rejected their suggestion that Central Freight be "non-suited" from the case immediately following Delaney's deposition, requiring Defendants to first produce some evidence that Central Freight had not assumed liability for claims against Viking Freight. It was only after Defendants produced such evidence, they contend, that Plaintiffs finally performed a

voluntary act to trigger removability by admitting, through counsel, that Central Freight is an improper party.[6] For these reasons, Defendants point to the October 13 telephone conference as the operative event that triggered their right of removal.

■ Having carefully considered the parties' written submission in light of the applicable law, the court concludes that Defendants' notice of removal was not timely filed. As noted above, Defendants had 30 days to remove this case after learning that Central Freight had been fraudulently joined, or, in other words, after learning that there was no reasonable basis for predicting that Texas law might impose liability on Central Freight. See Jernigan, 989 F.2d at 816. As the following excerpt from Defendants' amended answer demonstrates, they could have and, in fact, did ascertain that there was no reasonable basis for predicting that Plaintiffs could recover against Central Freight no later than July 8, 1998:

Defendants object and specially except to that portion of Plaintiffs' Petition wherein any allegations are made against Central Freight Lines, Inc., for the reason that Central Freight Lines, Inc., is not a proper party to this lawsuit. While Defendants deny all allegations contained in the Plaintiffs' Original Petition, the Defendants specifically deny that this Central Freight Lines, Inc., has any liability whatsoever to the Plaintiffs and, specifically alleges that

5. In SWS Erectors, counsel for the defendant, Infax, Inc., had drafted an affidavit memorializing a telephone conversation in which opposing counsel disclosed for the first time that the amount in controversy exceeded $100,-000. Id. at 491–92. Notwithstanding that disclosure, Infax took the position that its own voluntarily created affidavit cannot constitute "other paper" for purposes of provoking removability and that the case only became removable after Infax later received the deposition transcript of plaintiff's president that also disclosed the amount in controversy. In its motion to remand, the corporate plaintiff argued that defense counsel's affidavit did constitute "other paper" from which Infax could ascertain that the case had become

removable. The Fifth Circuit disagreed, holding that the affidavit was not created by the plaintiff's voluntary act as required by the "other paper" provision of § 1446(b). See id. at 494. The court also explained that a nonremovable action cannot be converted into a removable action by an affidavit created entirely by the defendant and based on the defendant's subjective knowledge. See id.

6. The evidence provided to Plaintiffs consisted of an affidavit executed on October 6, 1998, by Viking Freight's Director of Safety, Scot Bishop, attesting to the fact that Viking Freight had retained liability for employee claims asserted against it.

this Central Freight Lines, Inc., is not a proper party to this litigation. Defendant Central Freight Lines, Inc., did not exist prior to July 1997, and is a different company from the former Central Freight Lines, Inc., which at one time employed Plaintiff James Delaney. Defendant Central Freight Lines, Inc., denies that it was the employer of Plaintiff James Delaney at the time of the incident in question or at anytime. Additionally, Defendant Central Freight Lines, Inc., specifically denies that it assumed any liability for employee claims relating to the alleged on-the-job injuries from Viking Freight, Inc.

Defendants' First Amended Answer at ¶ IV. From this quoted language it is clear that by the time Defendants filed their amended answer, they were well aware of the factual and legal grounds for removing this case based on Central Freight's fraudulent joinder. Because they were able to detect the fraudulent joinder without any additional information supplied by Plaintiffs, it is evident that removability was first ascertainable when Defendants received Plaintiffs' state court complaint. Consequently, the 30–day removal period commenced at that time.

The court also agrees with Plaintiffs that Defendants' receipt of James Delaney's deposition transcript would have triggered removal had removability not been apparent from Plaintiffs initial complaint. The Fifth Circuit has squarely held that a deposition transcript qualifies as "other paper" within the meaning of 28 U.S.C. § 1446(b) that can start accrual of the 30–day period for removing. *See SWS Erectors,* 72 F.3d at 494. In this case, Delaney's deposition testimony stating that he had never been employed by Central Freight was tantamount to an admission that Plaintiffs had named the wrong party and could not recover from Central Freight in light of the fact that Central Freight had never assumed liability for claims against Viking Freight. Hence, the court holds in the alternative that Defen-

dants' right of removal accrued on or about September 8, 1998.

Defendants' reliance on *SWS Erectors* for the proposition that only Plaintiffs' voluntary acts and not Defendants' subjective knowledge could trigger removal is unavailing. To begin with, *SWS Erectors* is not a fraudulent joinder case and its analysis does not fit well within the framework of fraudulent joinder. The gist of Defendants' "subjective knowledge" argument seems to be that under *SWS Erectors* any information known to a defendant that was acquired by some means other than direct communication from the plaintiff will be disregarded for purposes of determining when that defendant could first ascertain that a case is removable. However, a review of the case law discloses that no such principle applies in the fraudulent joinder context. In cases involving fraudulent joinder, the removing party frequently—if not usually—has to rely on subjective knowledge to some degree to ascertain the existence of a fraudulently joined party. To read *SWS Erectors* as imposing the kind of "subjective knowledge" limitation that Defendants suggest is inconsistent with federal fraudulent joinder jurisprudence.

Additionally, the court's passing reference to a voluntary act requirement in *SWS Erectors* appears to be an allusion to the long-standing "voluntary-involuntary rule," which has been held to not apply in the fraudulent joinder context. *See, e.g., Insinga v. LaBella,* 845 F.2d 249, 254 (11th Cir.1988) (noting that "[f]raudulent joinder is a well established exception to the voluntary-involuntary rule"); *Leong v. Taco Bell,* 991 F.Supp. 1237, 1238 (D.Or. 1998) (describing the voluntary-involuntary rule as applying only "in the absence of fraudulent joinder"); *Todd Holding Co., Inc. v. Super Valu Stores, Inc.,* 744 F.Supp. 1025, 1027 (D.Colo.1990) (describing fraudulent joinder as an exception to the voluntary-involuntary rule that "allows removal without a voluntary act on plain-

tiff's part").[7] Moreover, because the voluntary-involuntary rule provides that a case that is non-removable on its initial pleadings can only become removable pursuant to a voluntary act of the plaintiff, *see Phillips v. Unijax, Inc.*, 625 F.2d 54, 56 (5th Cir.1980), that rule would have no apparent application in cases where, as here, it is ascertainable from the plaintiff's initial complaint that the case is removable based on fraudulent joinder.

While the court is aware of no cases in this circuit utilizing *SWS Erectors'* "voluntary act" analysis in the fraudulent joinder context, there are cases in which the Fifth Circuit has found removability triggered by something other than a plaintiff's voluntary acts. For example, in *Jernigan*, 989 F.2d at 815, the Fifth Circuit found removal to be untimely where it was done more than 30 days after a nondiverse defendant filed a state court answer from which the removing party could have ascertained that the nondiverse defendant had been fraudulent joined. In that case, therefore, it was a codefendant's voluntary act, rather than the voluntary act of the plaintiff, that triggered the right of removal. Because Defendants have directed the court's attention to no cases supporting the view that *SWS Erectors'* "voluntary act" requirement applies in the fraudulent joinder context, the court declines to employ its analysis here. Still, the court notes that one could argue that a plaintiff's act of filing a civil complaint that names a fraudulently joined defendant is itself a voluntary act.

## CONCLUSION

For the foregoing reasons, the court concludes that Defendants' notice of removal was not timely filed and that this case must be remanded. It is, therefore, ORDERED that Plaintiffs' motion to remand is hereby GRANTED and this case is REMANDED to the 6th Judicial District Court of Lamar County, Texas.[8] Plaintiffs have requested that Defendants be required to pay their costs and fees incurred as a result of opposing this removal. The court finds that both parties have advanced good faith arguments, however, and declines to impose sanctions.

7. *See also Great No. R. Co. v. Alexander,* 246 U.S. 276, 282, 38 S.Ct. 237, 62 L.Ed. 713 (1918) (holding that "in the absence of a fraudulent purpose to defeat removal, the plaintiff may by the allegations of his complaint determine the status with respect to removability of a case, ... so that whether such a case nonremovable when commenced shall afterwards become removable depends ... solely upon the form which the plaintiff by his voluntary action shall give to the pleadings in the case").

8. Because Plaintiffs' motion to remand has been resolved based on the untimeliness of Defendants' removal, the court does not reach the other bases for remand advanced by Plaintiffs.