**Jon AYRES and Vera Ayres, Plaintiffs,**

v.

**SEARS, et al., Defendants.**

**No. EP–08–CV–093–PRM.**

United States District Court,
W.D. Texas,
El Paso Division.

Aug. 18, 2008.

Brett Allen Duke, Brett Duke, P.C., Jason Chapman, El Paso, TX, for Plaintiffs.

Ricardo Ortiz, Delgado, Acosta, Braden & Johnes, P.C., Dallas, TX, for Defendants.

Alejandro Acosta, Jr., Bickerstaff Heath Delgado Acosta LLP, El Paso, TX, Plaintiffs/Defendants.

## *ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO REMAND*

PHILIP R. MARTINEZ, District Judge.

On this day, the Court considered: (1) Plaintiffs' Jon Ayres and Vera Ayres (collectively "Plaintiffs") "Motion to Remand," filed on April 10, 2008; (2) Defendants' Sears et al. (collectively "Defendants") "Response to Plaintiffs' Motion to Remand," ("Response"), filed on April 21, 2008; and (3) Plaintiffs' "Reply to Response to Motion to Remand," filed on April 30, 2008, in the above-captioned cause. After due consideration, the Court is of the opinion that Plaintiffs' Motion to Remand should be granted in part and denied in part for the reasons set forth below.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In March of 1987, Plaintiffs began the ten-year construction of their 4,200 square foot retirement home ("home") located in Marfa, Texas. Pls.' Am. Orig. Pet ¶ 14. During the course of construction, Plaintiffs installed a solar electrical system ("system") to provide power for heating and cooling their home. *Id.* The system used twelve 2–volt batteries, which "were required to be equalized." *Id.* In order to maintain the equalization of the batteries, Plaintiffs sought to purchase a generator from Defendant Sears. *Id.* ¶ 15. Plaintiffs claim that after learning of their needs, Defendant Sears recommended that they purchase a Craftsman 6300 Watt Electric Start Generator ("generator"). *Id.* On October 20, 2005, Plaintiffs went to pick up the generator from a Sears store located in El Paso, Texas. *Id.* ¶ 16. Upon picking up the generator, Plaintiff Jon Ayres alleges that he requested that Defendants Sears' El Paso, Texas Employees ("Employees") both assemble and test the generator. *Id.* Plaintiffs further allege that Juan Padilla ("Defendant Padilla"), as "store coach"[1] of the Sears El Paso store, and the Employees "represented to them that the Generator was properly assembled" and working correctly. *Id.* Plaintiffs installed the generator in their home, and after a short period of use, they allege that it "failed and caught fire," resulting in significant damage to their home. *Id.* ¶¶ 17–18.

On October 5, 2007, Plaintiffs filed their Original Petition in the 34th Judicial District Court of El Paso County, Texas.

---

1. The term "store coach" appears to be synonymous with store manager.

Pls.' Orig. Pet. 1. Therein, Plaintiffs allege breach of express and implied warranties, breach of contract, and violations of the Texas Deceptive Trade Practices Act due to the alleged malfunction of the generator. *Id.* ¶¶ 30–41. On November 16, 2007, Plaintiffs filed their Amended Original Petition, therein adding Defendant Padilla as a defendant. Pls.' Am. Orig. Pet. ¶ 9. On March 18, 2008, Defendants removed this action from Texas state court to the United States District Court for the Western District of Texas on the basis of diversity jurisdiction, alleging fraudulent joinder. Defs.' Notice of Removal 1.

Plaintiffs are both citizens of Texas. *Id.* at 3. All Defendants originally named in this action are citizens of foreign states. *Id.* at 3–4. Defendants contend that the Employees are a fictional entity.[2] *Id.* at 4. However, Defendant Padilla is a citizen of Texas. Defs.' Resp. 3. Thus, diversity of citizenship exists only if the Court disregards the citizenship of Defendant Padilla.

■ Defendants argue that the Court can ignore the citizenship of Defendant Padilla because Plaintiffs fraudulently joined him in an effort to defeat diversity.[3] Defs.' Notice of Removal 5. Plaintiffs argue that in addition to untimely removing this action, Defendants have failed in their attempt to prove the alleged fraudulent joinder of Defendant Padilla. Pls.' Mot. to Remand 1. Accordingly, the issues presently before the Court are: (1) whether Defendants timely removed this action, and (2) whether Plaintiffs fraudulently joined Defendant Padilla in order to defeat diversity.

## II. STANDARD

When plaintiffs choose to file suit in state court, defendants may remove the case to federal court if there is complete diversity of citizenship among the parties involved and the amount in controversy exceeds $75,000. 28 U.S.C. §§ 1332, 1441(a). Removal of a case from state to federal court is timely if notice of removal is filed either within (1) thirty days of receipt by defendants of the initial pleading stating a claim for relief, or (2) "thirty days after the service of summons upon the defendant[s] if such initial pleading has then been filed in court and is not required to be served on the defendant[s], whichever period is shorter." *Id.* at § 1446(b). If the initial pleading does not state a claim justifying removal, defendants may file a notice of removal within thirty days after receipt of "a copy of an amended pleading, motion, order or *other paper* from which it may first be ascertained that the case is one which is or has become removable." *Id.* (emphasis added).

While the language of § 1446(b) does not expressly mention fraudulent joinder, courts have held that defendants have thirty days to remove a case once they discov-

---

2. Because Plaintiffs do not challenge this assertion, the Court will treat the Employees as a fictitious entity and disregard their citizenship for jurisdictional purposes. 28 U.S.C. § 1441(a).

3. While the Fifth Circuit uses the term "fraudulent joinder" and "improper joinder" interchangeably, the preferred term is "improper joinder." *See Smallwood v. Ill. Cent. R.R. Co.,* 385 F.3d 568, 574 n. 1 (5th Cir. 2004) (en banc) (stating that "[a]lthough there is no substantive difference between [fraudu-

lent joinder and improper joinder], 'improper joinder' is preferred."). The term "fraudulent joinder," however, is still used by the Fifth Circuit. *E.g., Salazar v. Allstate Tex. Lloyd's, Inc.,* 455 F.3d 571, 573 (5th Cir.2006) (stating "under the fraudulent joinder doctrine, federal removal jurisdiction is premised on diversity and cannot be defeated by the presence of an improperly-joined nondiverse and/or in-state defendant."). Because Defendants in the present action use the term "fraudulent joinder," the Court will also use that term.

er the existence of fraudulent joinder. *See e.g., Jernigan v. Ashland Oil Inc.,* 989 F.2d 812, 814–15 (5th Cir.1993) (finding removal timely where defendants removed within thirty days of discovering fraudulent joinder); *Delaney v. Viking Freight Inc.,* 41 F.Supp.2d 672, 674 (E.D.Tex.1999) (stating that "[i]n the fraudulent joinder context, a defendant has 30 days from the date that the fraudulent joinder could first be ascertained in which to file a notice of removal.").

 To establish fraudulent joinder, a removing party must show either "(1) actual fraud in a plaintiff's pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse defendants in state court." *Smallwood v. Ill. Cent. R.R. Co.,* 385 F.3d 568, 573 (5th Cir.2004) (en banc) (quoting *Travis v. Irby,* 326 F.3d 644, 647 (5th Cir.2003)). Because Defendants have not alleged actual fraud in Plaintiffs' pleading of jurisdictional facts, only the latter method of establishing fraudulent joinder is before the Court.

 If the court is satisfied that the defendants timely removed their case from state to federal court, it must then determine whether the defendants have demonstrated that "there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Id.* at 573. "The party seeking removal bears a heavy burden of proving that the joinder of the in-state party was improper." *Id.* at 574. Moreover, the removing party must prove

fraudulent joinder by clear and convincing evidence. *Grassi v. Ciba–Geigy, Ltd.,* 894 F.2d 181, 186 (5th Cir.1990).

 The Fifth Circuit recognizes an exception in the fraudulent joinder context regarding the traditional voluntary-involuntary rule, which is a judicially created rule "whereby 'an action nonremovable when commenced may become removable thereafter only by the voluntary act of the plaintiff.'" *Crockett v. R.J. Reynolds Tobacco Co.,* 436 F.3d 529, 532 (5th Cir.2006) (quoting *Weems v. Louis Dreyfus Corp.,* 380 F.2d 545, 547 (5th Cir.1967)). In *Crockett,* the Fifth Circuit went on to state that "[c]ourts have long recognized an exception to the voluntary-involuntary rule where a claim against a nondiverse or in-state defendant is dismissed on account of fraudulent joinder." *Id.* In a removal action, it is the removing party that "bear[s] the burden of establishing jurisdiction." *Boone v. Citigroup, Inc.,* 416 F.3d 382, 388 (5th Cir.2005). Additionally, "[a]ny ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand." *Manguno v. Prudential Prop. and Cas. Ins.,* 276 F.3d 720, 723 (5th Cir. 2002).

## III. ANALYSIS

 In their Notice of Removal filed on March 18, 2008, Defendants failed to indicate when they first learned of Plaintiffs' alleged fraudulent joinder of Defendant Padilla.[4] Defendants' only reference to the time of when they learned of the alleged fraudulent joinder was in their Re-

---

**4.** In prior fraudulent joinder cases in the Fifth Circuit, defendants have indicated when they learned of the fraudulent joinder where timeliness of removal was in question. *See Johnson v. Heublein Inc.,* 227 F.3d 236, 239–40 (5th Cir.2000) (upholding the district court's decision to dismiss a co-defendant based on fraudulent joinder because co-defendant time-

ly removed the case "within days of receipt of the [c]o-plaintiffs' amended complaint."); *Jernigan,* 989 F.2d at 814–15 (finding removal timely where defendants stated without contradiction that they discovered fraudulent joinder on March 23,1990, and removed on March 30, 1990.).

sponse filed on April 21, 2008. Even then, Defendants still did not indicate the specific date when they learned of the alleged fraudulent joinder, instead stating that they "removed the matter immediately after it was learned that Plaintiffs had no possibility of recovering against Defendant Juan Padilla, Individually." Defs.' Resp. 2–3.

The Court finds the statement "immediately after it was learned" to be conclusory, as it points to neither a date nor an event where Defendants discovered the alleged fraudulent joinder. The Court could end its analysis at this point, and hold that Defendants failed to meet their burden of establishing removal jurisdiction by failing to adequately state when they learned of the alleged fraudulent joinder. *Boone,* 416 F.3d at 388.

■ Alternatively, by considering the pleadings in this case, the Court may try to ascertain on its own whether Defendants timely removed this action after learning of Plaintiffs' alleged fraudulent joinder.[5] In doing so, however, the Court finds that it can reasonably look to more than one date as the time when Defendants should have learned of the alleged fraudulent joinder.

### A. Amended Original Petition

■ The Court can first look to Plaintiffs' Amended Original Petition, filed on November 16, 2007, and served on Defendant Padilla on December 10, 2007, as the date that Defendants should have learned of the alleged fraudulent joinder. This petition triggered the thirty day removal period if it unequivocally alerted Defendants to the alleged fraudulent joinder. *See Bosky v. Kroger,* 288 F.3d 208, 211 (5th Cir.2002) (holding that "the information supporting removal in a copy of an amended pleading, motion, order, or other paper must be 'unequivocally clear and certain' to start the time limit running for a notice of removal under the second paragraph of section 1446(b).") (citation omitted).

While the Court declines to decide at this point whether the Amended Original Petition was itself enough to unequivocally alert Defendants to the alleged fraudulent joinder, Defendants' failure to definitively state when they learned of the alleged fraudulent joinder forces the Court to consider this pleading. Therefore, if the Court ultimately finds that Defendants should have learned of the alleged fraudulent joinder after receiving the Amended Original Petition filed on November 16, 2007, then Defendants untimely removed this action.

### B. Discovery Response

■ The Court can turn next to Defendant Padilla's Response to Plaintiffs' Request for Disclosure filed on January 7, 2008, to determine if this document should have alerted Defendants to the alleged fraudulent joinder. Courts in the Fifth Circuit have found that such responses constitute "other paper" within the meaning of § 1446(b). *See Dixon v. Alcatel*

---

5. The Court notes that at least one other district court has attempted to determine whether defendants removed their case within thirty days of discovering plaintiffs' alleged fraudulent joinder. *See Naef v. Masonite Corp.,* 923 F.Supp. 1504, 1512 (S.D.Ala.1996) (stating that the court "must determine at what point Defendants could have intelligently ascertained that the action was removable through reasonable scrutiny of the pleadings and facts of the action as it developed in state court."). While the Court finds that *Naef* is instructive, it does not feel that a court *must* engage in this type of analysis. Therefore, the Court looks to the analysis simply as a guide for determining when a defendant first learned of a plaintiff's fraudulent joinder.

*USA, Inc.,* No. 3:99–CV–1986–(G), 2000 WL 193620, at *2 (N.D.Tex. Feb. 16, 2000) (holding that plaintiffs' disclosure responses constituted "other paper," giving notice to defendant that federal jurisdiction exists); *Johnson v. Dillard Dept. Stores,* 836 F.Supp. 390, 391 (N.D.Tex.1993) (holding in part that plaintiff's answers to defendants' request for admissions constituted "other paper"). If a plaintiff's discovery answers constitutes "other paper" under § 1446(b), then it is axiomatic that a defendant's discovery answers should also constitute "other paper."

■ The Court could find that Defendants should have been aware of the alleged fraudulent joinder of Defendant Padilla after he gave his Response to Request for Disclosure on January 7, 2008. The Court could view Defendant Padilla's denial of Plaintiffs' allegations as putting Defendants on notice that he allegedly did not participate in the sale of the generator to Plaintiffs. Had Defendants looked further into Defendant Padilla's denial, they could have discovered that

6. Although Defendants took Defendant Padilla's Affidavit on this date, it is unclear whether this is when they first became aware of the information contained within his Affidavit. Defendant Padilla could have alerted Defendants to the facts contained within his Affidavit before March 12, 2008. To try and determine if Defendants learned of the alleged fraudulent joinder prior to this date is nothing more than speculation, and further leads to the ambiguity in trying to determine when Defendants became aware of the alleged fraudulent joinder. Nevertheless, for the purposes of this section, the Court will assume, without deciding, that March 12, 2008, is the first date that Defendants learned of the information contained within Defendant Padilla's affidavit, thus triggering the thirty day removal period.

7. At first glance, it appears that the Fifth Circuit does not recognize an affidavit prepared by a defendant as "other paper" under § 1446(b). *See S.W.S. Erectors, Inc. v. Infax,*

not only does he claim that he never made any warranties to Plaintiffs regarding the sale of the generator, but that he also states that he never even met them.

If Defendants had been diligent in their investigation of Defendant Padilla's January 7, 2008 Response, they would have likely discovered the alleged fraudulent joinder. However, they failed to do so, and therefore, removal of this action did not take place until more than two months after this date. If the Court determines that this date triggered the thirty day removal period, then Defendants failed to timely remove this action.

### C. Defendant Padilla's Affidavit

■ Finally, the Court can look to Defendant Padilla's Affidavit filed on March 12, 2008, as the triggering event for giving notice to Defendants of the alleged fraudulent joinder.[6] If the Court chooses this date, then Defendants timely removed this action on March 18, 2008.[7]

Inc., 72 F.3d 489, 494 (5th Cir.1996) (holding that an affidavit created by a defendant did not constitute "other paper" for purposes of § 1446(b) because "defendant's subjective knowledge" constituted the basis for the affidavit). This holding, however, does not appear to apply in the fraudulent joinder context, because a subjective act by a defendant would fall under the voluntary-involuntary exception recognized by the Fifth Circuit in fraudulent joinder cases. *See Delaney,* 41 F.Supp.2d at 677–78 (explaining that *S.W.S. Erectors* is not a fraudulent joinder case, and its analysis does not fit well within the framework of fraudulent joinder because "[i]n cases involving fraudulent joinder, the removing party frequently-if not usually—has to rely on subjective knowledge to some degree to ascertain the existence of a fraudulently joined party."). Therefore, the Court finds that Defendant Padilla's Affidavit, although prepared with his subjective knowledge, rather than in response to an action taken by Plaintiffs, constitutes "other paper under" § 1446(b).

■ However, as previously noted, this is not the only date that the Court can look to in trying to determine when Defendants should have discovered the alleged fraudulent joinder. By not clearly stating when they learned of the alleged fraudulent joinder, Defendants have created both ambiguity and doubt in their Notice of Removal, and as a result, the Court finds that they did not properly remove this action. *Manguno*, 276 F.3d at 723; *see also Smith v. Nat. Life Ins. Co.*, 187 F.Supp.2d 635, 639 (S.D.Miss.2001) (stating that "when doubt exists as to the right to removal in the first instance, ambiguities are to be construed against removal."); *Washington v. Direct Gen. Ins. Agency*, 130 F.Supp.2d, 820, 823 (S.D.Miss.2000) (stating that "the removal statutes are strictly construed, and all doubt will be resolved against a finding of proper removal."). The Court thus remands this action to state court.

## IV. ATTORNEY'S FEES AND COSTS

Pursuant to 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." The Supreme Court has held that "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141, 126 S.Ct. 704, 163 L.Ed.2d 547 (2005); *see also Valdes v. Wal–Mart Stores, Inc.*, 199 F.3d 290, 293 (5th Cir.2000) ("[T]he question we consider in applying § 1447(c) is whether the defendant had objectively reasonable grounds to believe the removal was legally proper.").

■ In the present action, Plaintiffs do not argue that Defendants lacked an objec-

tively reasonable basis for removal, but simply urge the Court to order Defendants "to pay all costs and expenses, including attorney's fees, incurred as a result of this improper removal." Pls.' Mot. to Remand 9. The Court finds that Defendants had an objectively reasonable ground for filing their Notice of Removal based upon their allegation of fraudulent joinder. Therefore, the Court exercises its discretion to decline to award attorney's fees.

## V. CONCLUSION

Based on the foregoing legal principles and analysis, the Court concludes that Defendants failed to adequately state when they learned of the alleged fraudulent joinder, thereby leaving both doubt and ambiguity as to whether they timely removed this action. Since it is unclear whether Defendants timely removed this action, the Court need not address whether Plaintiffs fraudulently joined Defendant Padilla. Plaintiffs' "Motion to Remand" should therefore be granted in part and denied in part pursuant to 28 U.S.C. § 1447.

Accordingly, **IT IS ORDERED** that Plaintiffs Jon Ayres and Vera Ayres's "Motion to Remand" (Docket No. 5) is **GRANTED IN PART AND DENIED IN PART.**

**IT IS FURTHER ORDERED** that the above-captioned cause is **REMANDED** to the 34th Judicial District Court of El Paso County, Texas.

**IT IS FURTHER ORDERED** that all pending motions, if any, are **DENIED AS MOOT.**

**IT IS FINALLY ORDERED** that the Clerk of the Court shall close this matter.